THE ANGLO-SOUTH AMERICAN TRUST COMPANY, Respondent, *v.* GEORGE UHE, Appellant, Impleaded with Another.

(Argued January 18, 1933; decided February 28, 1933.)

*Carl E. Peterson* for appellant. The plaintiff pleaded and tried the action upon the theory of full performance as to the first draft, while the proof established that the documents accompanying it were defective. The complaint should, therefore, be dismissed as to this draft. (*LaChicotte* v. *Richmond Ry. & Elec. Co.*, 15 App. Div. 380; *Stern* v. *McKee*, 70 App. Div. 142; *Claflins, Inc.*, v. *Gerber*, 214 App. Div. 245; *Beals* v. *Hirsch*, 214 App. Div. 86; *Jankowitz* v. *Manhattan Swiss Embroidery Co.*, 196 App. Div. 22; *Fischer* v. *Schram*, 173 App. Div. 147; *Brandt* v. *City of New York*, 110 App. Div. 396; 186 N. Y. 599; *McEntyre* v. *Tucker*, 36 App. Div. 53; *Mac-Knight Flintic Stone Co.* v. *Mayor*, 21 App. Div. 472.) A bank which honors a draft drawn against a letter of credit but in violation of its terms, has no recourse against the buyer who requested the credit. (*Courteen Seed Co.* v. *Hong Kong & S. B. Corp.*, 216 App. Div. 495; 245 N. Y. 377; *Bank of Montreal* v. *Recknagel*, 109 N. Y. 482; *Banco Nacional Ultramarine* v. *First Nat. Bank,* 289 Fed. Rep. 169; *Germania Bank* v. *Taaks*, 101 N. Y. 442; *Frey & Son, Inc.*, v. *Sherburne Co.*, 193 App. Div. 849; *Lamborn* v. *Lake Shore Banking & Tr. Co.*, 196 App. Div. 504; 231 N. Y. 616; *Portugese American Bank* v. *Atlantic Nat. Bank*, 200 App. Div. 575; *Bank of Italy* v. *Merchants Nat. Bank*, 236 N. Y. 106; *Laudisi* v. *American Exchange Nat. Bank*, 239 N. Y. 234.) The documents accompanying the second draft were also defective and the complaint must, therefore, be dismissed as to this transaction. (*Alsens A. P. C. Works* v. *Degnon Construction Co.*, 222 N. Y. 34; *Lord Constr. Co.* v. *Edison P. C. Co.*, 234 N. Y. 411.)

*Charles F. Bailey* and *Donald K. Miller* for respondent. There is ample evidence to support the finding that the first set of documents fully complied with the requirements of the application for letter of credit. (*Littlejohn* v. *Shaw*, 159 N. Y. 188; *Strasbourger* v. *Leerburger*, 233 N. Y. 55; *Cawley* v. *Weiner*, 236 N. Y. 357.) There was ample

evidence to support the finding that appellant waived all irregularities in the second set of documents. (*Alsens A. P. C. Works* v. *Degnon Constr. Co.*, 222 N. Y. 34; *Lord Constr. Co.* v. *Edison P. C. Co.*, 234 N. Y. 411; *Hevenor* v. *Union Ry. Co.*, 204 App. Div. 535; *North Side News Co.* v. *Cypress*, 75 Misc. Rep. 129; *Post* v. *Frank*, 75 Misc. Rep. 130; *Clark* v. *West*, 193 N. Y. 349; *Stone* v. *Cohen*, 4 App. Div. 175.)

CRANE, J.   Upon application of the appellant George Uhe, of New York city and Hempstead, Long Island, the respondent, The Anglo-South American Trust Company, issued its letter of credit, dated at New York, February 6, 1926, reading as follows:

" THE ANGLO-SOUTH AMERICAN TRUST COMPANY

" Number 4/133 Expiration date March 31st, 1926

" COMMERCIAL LETTER OF CREDIT

" NEW YORK, *February 6th*, 1926.

" Mr. George Uhe, Managua, Nicaragua, is hereby authorized to value upon The Anglo-South American Trust Co., New York, N. Y., for account of Mr. George Uhe, New York, N. Y., at sixty days' sight for any sum or sums not exceeding in all Eight Thousand Dollars U. S. Currency ($8,000.00 USC) for full invoice value of Ten (10) Long Tons of India Rubber, 3 Tons at 32c and 7 tons at 35c per pound from Nicaragua to New York, N. Y., in one or more lots.

" The drafts are to be negotiated on or before March 31st, 1926.   The ' on board ' Bills of Lading to bear a date not later than March 31st, 1926, and unless specified in this credit, two copies of the Bills of Lading with Commercial Invoice, Weight Note, Inspection Certificate, and Consular Invoice to be forwarded to this Company by the Bank or Bankers negotiating the draft attached to the first via of the draft.   All other documents to accompany the second via of the draft.

" Bills of Lading to be made out to the order of The Anglo-South American Trust Co., New York, N. Y.

" Insurance to be effected by Mr. George Uhe, New York, N. Y.

" All drafts drawn under this credit are to contain the clause:

" ' Drawn under Letter of Credit of The Anglo-South American Trust Company, New York, No. 4/133, dated February 6th, 1926— ' and the amount of the drafts to be noted on the back hereof by the negotiating Bank or Bankers.

" The Anglo-South American Trust Company hereby engages with the drawers, endorsers and *bona fide* holders of drafts drawn in compliance with the terms of this credit that the same shall be duly honored upon presentation.

" THE ANGLO-SOUTH AMERICAN TRUST COMPANY

" (Signed)   CECIL PLATT

" *Vice President*

" (Signed)   J. M. TINSLEY,

" *Assistant Sec'y.*'

The application for this letter of credit took the form of an agreement between Uhe and the bank, wherein it was stated that the trust company was to open a commercial letter of credit by cable for the account of George Uhe in favor of himself, at Managua, Nicaragua, for a sum not exceeding $8,000, " available by drafts at 60 days sight on your agents or correspondents who are to be advised of the terms of the credit by cable.   The drafts to be drawn and negotiated on or before March 31st, 1926, for 100 per cent invoice value of the goods and be accompanied by such documents as are indicated by the answers of the applicants to the printed questions hereunder, such documents purporting to evidence shipment, IN ONE OR MORE LOTS, of goods described in the Commercial Invoice as shown hereunder from Nicaragua direct or indirect to

New York on or before March 31st, 1926." The documents to accompany the draft were stated to be bills of lading to the order of The Anglo-South American Trust Company commercial invoice, consular invoice, net weights and inspection certificate.

The rubber·was shipped in two lots and the first draft was presented to the respondent on April 20, 1926, for $3,909.50, dated March 23, 1926, drawn upon the respondent by George Uhe, at Managua, payable 60 days from date. Accompanying the draft were bills of lading, weight notes and commercial and consular invoices covering ninety-five bags of rubber. One important document was missing so that the terms of the letter of credit were not complied with. This document was the inspection certificate. As the drafts were to be payable by the trust company 60 days after sight, or acceptance, to wit, June 20, 1926, the appellant, by the terms of his agreement, had until the day before the twentieth to furnish the bank with the money to meet the drafts. This was contained in the following provision: " If the drafts drawn under the credit are payable in United States currency, to pay to the Company at its said office, on demand, but in any event not later than one business day prior to the maturity of the drafts under the credit, the face amount of said drafts."

Another provision of the agreement apparently provided for a custom of the trade permitting the purchaser of the letter of credit to assume possession of the documents for the purpose of sale or resale of the goods before the maturity of the drafts. This provision is couched in this language: " The applicants hereby recognize and admit the ownership of the Company in and its right to the possession and disposal of all goods and the proceeds thereof for which the Company or the drawees named in said credit may come under any engagement in virtue of said credit, as also to the possession of all bills of lading or other documents for and policies or certificates of

insurance on said goods until such times as any and every indebtedness or liability of the Applicants, now due to or hereafter accruing in favor of the Company under said credit or otherwise, shall have been fully paid and discharged, and in the event of the Company hereafter entrusting the said goods to the Applicants for the purpose of sale or otherwise, the Applicants hereby consent that the right of the Company to repossess itself of the same or of the proceeds hereof may be, at any time, exercised at the option or discretion of the Company."

Accordingly, on the 21st of April, or the day after the acceptance of the draft by the trust company, George Uhe, in New York, was notified of the arrival of the documents with the acceptance of the draft; they were tendered to him by the trust company, but he refused to receive them because there was no inspection certificate attached to the draft, and he so notified the trust company. Thereupon, the trust company undertook to procure from the parties at Managua, Nicaragua, the omitted document. Whether or not the paper thereafter received was a proper and sufficient inspection certificate is immaterial, because of the subsequent action of the trust company. On May 18, 1926, the missing inspection certificate arrived in New York and respondent so informed the appellant. It did not, however, tender to him again all the documents called for in the letter of credit, including this inspection certificate or make demand upon him. The appellant, therefore, had until June 19, 1926, to pay the face of the draft, plus expenses, and take up the documents. Before that day arrived, and on May 20, 1926, the trust company sold the merchandise and now seeks to hold the defendant for the draft which it accepted and has been obliged to pay.

From the enumeration of these facts it is evident that the trust company has failed to comply with its agreement and cannot recover. We have heretofore held that these letters of credit are to be strictly complied with, which means that the papers, documents and shipping

descriptions must be followed as stated in the letter. There is no discretion in the bank or trust company to waive any of these requirements. The terms of the letter constitute an agreement between the purchaser and the bank. (*Laudisi* v. *American Exchange Nat. Bank*, 239 N. Y. 234.) The respondent in this case should not have accepted the draft without the inspection certificate. This was to accompany the draft, for reasons which are quite apparent. The application for the letter of credit recognized the right to sell and dispose of documents representing the shipments before the arrival of the goods or, at least, before the due date of the drafts. The documents accepted by the trust company were defective. The fact that it later received the inspection certificate did not compel Uhe to take up the documents until tender and demand before June the 19th. The bank, after the arrival of the certificate of inspection, did not retender all of the documents to Uhe. Instead of holding the perfected papers until the due date, when, if the trust company had fulfilled its contract, Uhe would be obliged to take up the documents and pay the drafts, the company sold the goods at a loss. In two particulars it has failed to keep its contract: *First*, in accepting the draft without the inspection certificate, and, *second*, after obtaining this paper, selling the goods before Uhe's due date or before complete tender and demand.

There was a second shipment. On April 26, 1926, the respondent accepted a draft for $3,284.10, dated April 8, 1926, drawn upon it by George Uhe at Managua, payable 60 days from date. The letter of credit stated that the drafts were to be negotiated on or before March 31, 1926. The trust company recognizes that it had no right to accept this draft, as it was negotiated after the date specified, but it says that Uhe waived this breach. The goods actually arrived in New York on April 20, 1926, or before the documents were received by the trust company. As Uhe wished to remove the goods from the dock immediately on their arrival, without

producing the necessary shipping documents, in order to avoid the accrual of storage charges, the trust company undertook to accomplish this by providing security to the carrier and to the Collector of Customs. A letter was addressed by the appellant to the respondent on April 20, 1926, which stated, after describing this shipment, the following: " In consideration of your advising the Collector of Customs at the Port of New York that you agree to our giving bond for the production of the Bills of Lading and your also indemnifying the Agents of the Grace Line against any loss by reason of their delivering the merchandise to us, we hereby undertake to sign your usual Trust Receipt with the clause ' no variation from the terms of Letter of Credit No. 4/133 shall limit, abridge or release my liability to the Trust Company hereunder ' stamped thereon and to indemnify and hold you harmless against any loss, cost, damage and expenses caused or brought about by reason of your having furnished such letter and indemnity and to pay you any such loss, cost, damage and expenses on demand. Please deliver the letter and indemnity to our custom house brokers, A. J. Bracher & Co. issuing them in their name."

The trust company prepared these letters and sent them to Uhe who returned them the next day with the communication, stating: " We prefer not to disturb these 87 packages of rubber until we see the documents."

The Collector of the Customs of the Port of New York was not advised of the giving of any bond for the production of the bills of lading and no bond was given. Neither were the agents of the Grace line indemnified against any loss, nor was the merchandise delivered. The trust receipt referred to was not signed. As stated, the initial papers were returned to the trust company. The shipping documents, when they did arrive later, and on April 26, 1926, were rejected by Uhe because defective, and not in compliance with the terms of the letter of credit. We find nothing in these facts showing any waiver by Uhe of the conditions of his letter of credit. Before any

binding act upon the part of the trust company regarding the delivery of the arrived goods Uhe changed his mind, as he had a right to do, and refused to accept the goods until the documents arrived.

The Anglo-South American Trust Company made a contract with George Uhe in the form of a letter of credit. The courts are to enforce it as written, unless by subsequent action the parties have waived their rights thereunder. The trust company having accepted drafts unauthorized by the terms of the letter of credit, and Uhe having waived none of the conditions, the judgment against him for the amount of the acceptance must be reversed and the complaint dismissed.

The judgments should be reversed, and the complaint dismissed, with costs in all courts.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgments reversed, etc.